UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GUADALUPE PINA, | : | |
| Petitioner, | : | Civ. No. 16-4280 (KM) |
| v. | : | |
| TISH CASTILLE, | : | OPINION |
| Respondent. | : | |

**KEVIN MCNULTY, U.S.D.J.**

### I.   INTRODUCTION

The petitioner, Guadalupe Pina, a native of Mexico, is an immigration detainee currently lodged at the Hudson County Correctional Facility. She is proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. She challenges her prolonged immigration detention and requests a bond hearing before an Immigration Judge ("IJ"). Ms. Pina, who illegally reentered the country after being removed in 2005, was detained pursuant to a reinstated order of removal beginning on December 7, 2015. On January 23, 2017, however, she obtained an order barring her removal to Mexico, where she faces a credible threat of torture. The government is currently seeking a third country that will accept her.

The threshold legal issue is whether Ms. Pina should be considered a pre-removal-order detainee or a post-removal-order detainee (and, if post-removal, when that status began). I conclude that Ms. Pina has been a post-removal-order detainee since she was placed in detention on December 7, 2015. The habeas petition will be denied without prejudice to the filing of an amended habeas petition that raises a claim under the post-removal-order standards of *Zadvydas v. Davis*, 533 U.S. 678 (2001).

## II. BACKGROUND

The factual and procedural background does not appear to be in dispute. Ms. Pina is a native and citizen of Mexico. She entered the United States in the 1980s and became a lawful permanent resident. However, beginning in 1997, Ms. Pina had a number of arrests and criminal convictions. In January 2005, an IJ ordered that Ms. Pina be removed from the United States. Ms. Pina appealed that decision to the Board of Immigration Appeals ("BIA"). The BIA affirmed the IJ's decision on June 17, 2005, rendering the order of removal final. Ms. Pina was removed to Mexico on June 22, 2005.

Sometime thereafter, Ms. Pina reentered the United States illegally. Since then, she has been convicted of several other criminal charges. On April 23, 2015, the United States Department of Homeland Security reinstated Ms. Pina's 2005 removal order. (*See* Dkt. No. 6-2 at p.2) Pending removal, she was placed into immigration detention on December 7, 2015.

Ms. Pina then claimed that her life and freedom would be threatened if she were returned to Mexico. Her claim was referred to the United States Citizenship and Immigration Services ("USCIS") for adjudication. On January 7, 2016, USCIS determined that Ms. Pina had established a reasonable fear of torture, and referred the case to an IJ so that she could apply for withholding of removal under the Convention Against Torture ("CAT"). (*See* Dkt. No. 6-4 at p.2-5; Dkt. No. 6-5 at p.2-3)

On March 15, 2016, Immigration and Customs Enforcement ("ICE") reviewed Ms. Pina's custody status and decided to continue her immigration detention. (*See* Dkt. No. 6 at p.2-3) Ms. Pina's custody status was again reviewed by ICE on June 14, 2016. Once again, ICE decided to continue Ms. Pina's immigration detention. (*See* Dkt. No. 6-6 at p.1)

In July 2016, Ms. Pina filed this federal habeas petition. The petition states that her prolonged immigration detention violates the Constitution, and requests a bond hearing before an IJ. On September 6, 2016, the respondent filed a response in which it stated that a hearing on the merits of Ms. Pina's application for withholding of removal to Mexico was scheduled for October 19, 2016. Ms. Pina did not file a reply.

At the Court's request, the government submitted a status update on February 3, 2017. (*See* Dkt. No. 10) The government states that the IJ granted Ms. Pina's application for withholding of removal to Mexico on January 23, 2017. The government is now processing Ms. Pina's removal to another country, and continues to oppose her release from custody. Ms. Pina did not file a response to the government's February 3, 2017 status report.

## II. DISCUSSION

A. <u>Introduction: The Legal Framework of the Issue</u>

As noted above, Ms. Pina is subject to a 2005 order of removal, which was reinstated in 2015 after her illegal reentry. She was detained pursuant to that reinstated order beginning on December 7, 2015. She petitioned for, and on January 23, 2017, was granted, withholding of removal because she faces a threat if returned to her native Mexico. That does not mean that Ms. Pina cannot be removed from the United States; it means only that she will not be sent to Mexico. *See Reyes v. Lynch*, No. 15-0442 2015 WL 5081597, at *3 (D. Colo. Aug. 28, 2015) ("Even if Petitioner prevails on his withholding claim, the United States may remove Petitioner to a country other than Mexico if such country will accept him, and there is no administrative or judicial relief to which Petitioner would be entitled against such a removal.") (citing 8 C.F.R. § 1208.2(c)(3)(i)). The United States is currently processing her removal to a third country.

3

The threshold question is whether Ms. Pina, for the period from December 7, 2015, to the present, should be considered a pre-removal-order immigration detainee under 8 U.S.C. § 1226(a), or a post-removal-order immigration detainee under 8 U.S.C. § 1231(a)(1).[1] The issue is a consequential one, because it determines the legal standard that would govern Ms. Pina's application for release from custody. I briefly survey those pre-removal and post-removal standards.

i.   *Pre-removal (§ 1226) Standards*

Title 8, Section 1226 of the United States Code grants the Attorney General the authority to detain aliens in removal proceedings before the issuance of a final order of removal. This period of detention is known as the "pre-removal" period. The permissible period of detention, however, is not unlimited. After a certain point it may become unreasonable, and the detainee may be entitled to release on bail. *See also Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011) (period of pre-removal detention must be reasonable); *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 474 (3d Cir. 2015) (under *Diop*, after six months, and certainly within a year, the burden to the petitioner's liberties would outweigh any justification to detain the petitioner without a bond hearing).

ii.   *Post-removal-order (§ 1231) Standards*

Title 8 of the United States Code Section 1231(a) governs detention after an order of removal has been entered. This is known as the "removal period" or "post-removal-order"

---

[1] There are well-reasoned decisions on both sides of that issue. *Compare Guerra v. Shanahan*, 831 F.3d 59, 63-64 (2d Cir. 2016) (holding that immigration detainee's detention during pendency of withholding-only proceedings is under § 1226(a)); *Rafael Ignacio v. Sabol*, No. 15-2423, 2016 WL 4988056, at *4 (M.D. Pa. Sept. 19, 2016) (same); *Guerrero v. Aviles*, No. 14-4367, 2014 WL 5502931, at *9 (D.N.J. Oct. 30, 2014) (same); *with*, *Padilla-Ramirez v. Bible*, 180 F. Supp. 3d 697, 701-02 (D. Idaho 2016) (petitioner detained under a reinstated order of removal proceeding with withholding of removal proceedings detained under § 1231(a)); *Reyes*, 2015 WL 5081597, at *3-4 (same); *Dutton-Myrie v. Lowe*, No. 13-2160, 2014 WL 5474617, at *3-4 (M.D. Pa. Oct. 28, 2014) (same).

4

period. The statute provides that, "except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." *Id.* § 1231(a)(1)(A). Section 1231(a)(2) requires that the alien be detained during the ninety-day post-removal-order period. *See* 8 U.S.C. § 1231(a)(2). If the alien is not removed during that ninety-day period, then § 1231(a)(6) authorizes either continued detention or release on bond:

> An alien ordered removed who is inadmissible under section 1982 of this title, under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the United States Supreme Court held that § 1231(a)(6) "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689. To state a habeas claim under § 2241 for release, the petitioner must provide facts showing good reason to believe that there is no reasonable likelihood of her actual removal in the reasonably foreseeable future. *See Zadvydas,* 533 U.S. at 701. "*Zadvydas* does not delineate the boundaries of evidentiary sufficiency, but it suggests that an inversely proportional relationship is at play: the longer an alien is detained, the less he must put forward to obtain relief." *Alexander v. Attorney Gen. of United States,* 495 F. App'x 274, 276–77 (3d Cir. 2012) (citing *Zadvydas,* 533 U.S. at 701). As a rule of thumb, the Supreme Court stated that six months is a presumptively reasonable period of post-removal detention under § 1231(a)(6). *See Zadvydas,* 533 U.S. at 701.

Whether Ms. Pina is entitled to relief under the post-removal standards of *Zadvydas*, then, depends on (a) whether, and (b) for how long, she has been in post-removal-order detention. If Ms. Pina's post-removal-order detention pursuant to § 1231(a) began on December 7, 2015 (when she was placed in detention after her reentry and conviction of criminal charges), then she has been detained far longer than the six month period that is presumptively reasonable under *Zadvydas*, and the Court would be obligated to consider her release under post-removal standards.

### B. Withholding-of-Removal Proceedings While Alien is in Immigration Detention on a Reinstated Order of Removal

Generally speaking, an alien graduates from pre-removal to post-removal status when an order of deportation or removal becomes final.[2] An order of removal becomes final when the BIA has affirmed it on appeal, or when the time to seek review with the BIA expires without an appeal having been filed. 8 U.S.C. § 1101(a)(47)(B).[3]

Illegal reentry after an order of removal does not entitle the alien to restart the process. Pursuant to 8 U.S.C. § 1231(a)(5), where the Attorney General determines that an individual has illegally reentered the country following her removal or deportation, that alien's "prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the

---

[2] There is no distinction, by the way, between the terms deportation and removal for any purpose relevant to this Opinion. *See Avila-Macias v. Ashcroft*, 328 F.3d 108, 111-12 (3d Cir. 2003) (the term order of removal encompasses orders of deportation and exclusion, and there is no meaningful distinction between deportation and removal under the current statutory scheme).

[3] A final order of removal will revert to pre-final status, however (and the alien will revert to pre-removal status), if the "removal order is judicially reviewed and if a court orders a stay of the removal of the alien." In such a case the order does not become final until the court entering the stay issues a final order. *See* 8 U.S.C. § 1231(a)(1)(B)(ii).

alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after [his] reentry." What that means is that the old order of removal may simply be reinstated, and the alien will then resume her post-removal-order status. As of December 2015, that is what happened here.

At first glance, this statutory scheme appears to embody a principle of "once removed, always removed." And there is good case law support for that view. *See Verde-Rodriguez v. Att'y Gen.*, 734 F.3d 198, 203 (3d Cir. 2013) (for purposes of the jurisdictional thirty-day time limit for seeking review of a final order of removal in the Court of Appeals, a reinstated order of removal is considered administratively final on the date the original removal order was issued); *see also Dinnall v. Gonzales*, 421 F.3d 247, 251 n.6 (3d Cir. 2005) ("an order reinstating a prior removal order is [otherwise] the functional equivalent of a final order of removal"). A reinstated removal order is not subject to review and is final at the moment of its issuance, because it is merely a reassertion of the prior, already-final order of removal.

There is a wrinkle, however. In one narrow respect, a removed alien who has illegally reentered the country does not stand in the same shoes as before. Even though the prior removal order has been reinstated, is final, and is not otherwise subject to review, ICE may consider an alien's current application for withholding of renewal, based on her claim that she faces a threat to her life or freedom if returned to her native country. (I will call this a "threat" application for short.) Specifically, under 8 U.S.C. § 1231(b)(3)(A), the Attorney General "may not remove an alien to a country [where] the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."

7

"Withholding of removal," however, is a somewhat misleading term. It means only that such an alien may not be sent to her home country, where she faces a danger; she remains subject to the order of removal, and may be sent to a safe third country that will accept her. *See* 8 U.S.C. § 1231(b)(2)(E)(vii). It is not removal as such, but removal *to Mexico* that is "withheld."

The question becomes whether the review or grant of such a removed alien's threat petition will in effect reopen a final order of removal and return the person to pre-removal status. As to that issue, the cases are in conflict. *See* p.4, n.1, *supra*.

Emblematic of the "pre-removal" side of the split is *Guerrero v. Aviles*, No. 14-4367 (WJM), 2014 WL 5502931, at *9 (D.N.J. Oct. 30, 2014). In considering whether the order of removal remained final during withholding proceedings, *Guerrero* looked to *Mebuin v. Attorney General*, 570 F. App'x 161 (3d Cir. 2014), which viewed the finality issue through the lens of appellate jurisdiction. In that non-precedential opinion, the Third Circuit reasoned that the jurisdiction of the Court of Appeals is limited to final orders of removal. *See* 8 U.S.C. § 1252(a)(1). That finality may be subverted, however, by subsequent actions at the administrative level. For example, the grant of a motion to reopen, or a BIA remand on issues that are not independent of removability, might vitiate finality and rob the Court of Appeals of jurisdiction over the order from which an appeal was taken. 570 F. App'x at 161–2.

*Guerrero* reasoned by extension from *Mebuin* that when withholding proceedings are pending, the IJ's decision could affect the reinstated order of removal, at least to the extent of barring removal to a specific country. The IJ's decision, moreover, is subject to reversal or modification on appeal to the BIA, and perhaps ultimately the Court of Appeals. *See Guerrero*, 2014 WL 5502931 at *5-8. Those circumstances, says *Guerrero*, are sufficient to render a

8

removal order non-final. And the order being non-final, the detainee should be regarded as having reverted to pre-removal status.

*Guerrero* therefore held that the permissibility of continued detention is governed by the pre-removal standards of § 1226(a) during withholding of removal proceedings on a reinstated order of removal. Although I do not ultimately agree with the result, the reasoning of the opinion is powerful and worth quoting at length:

> [T]he question in this case is whether Guerrero's reinstated order of removal to Honduras is administratively final where the Immigration Judge has scheduled a hearing on whether to withhold Guerrero's removal to Honduras. Determining the date of administrative finality is important under the INA for two reasons. First, the removal period, and the six-month presumptively reasonable period of detention under § 1231(a)(6), do not begin until "the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). Second, courts of appeals have jurisdiction to review orders of removal only where the orders are final (and the alien has exhausted all available administrative remedies). *See* 8 U.S.C. § 1252(b)(9) ("Judicial review of all questions of law and fact ... arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section."); 8 U.S.C. § 1252(d) ("A court [of appeals] may review a final order of removal only if—(1) the alien has exhausted all administrative remedies available to the alien as of right, and (2) another court has not decided the validity of the order ...").
>
> Finality is defined by 8 U.S.C. § 1101(a)(47)(B), which provides that removal orders "become final upon the earlier of—(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B). It follows that, if Guerrero is entitled to appeal the Immigration Judge's order that will be issued after the judge conducts the hearing regarding the withholding of Guerrero's removal to Honduras, then Guerrero's order of removal is not administratively final under § 1101(a)(47)(B).

The regulations governing the withholding of a reinstated order of removal to a particular country are set forth in 8 C.F.R. § 241.8. Section 241.8(a) provides that an alien "who illegally reenters the United States after having been removed ... shall be removed from the United States by reinstating the prior order," and specifies that "[t]he alien has no right to a hearing before an Immigration Judge in such circumstances." 8 C.F.R. § 241.8(a). However, § 241.8(e) creates an exception by which an alien who expresses a fear of returning to the country designated in his reinstated removal order is "immediately" referred to an asylum officer, who must determine if the alien has "a reasonable fear" of returning to the country designated in the reinstated order, in accordance with 8 C.F.R. § 208.31. *See* 8 C.F.R. § 241.8(e) ("If an alien whose prior order of removal has been reinstated under this section expresses a fear of returning to the country designated in that order, the alien shall be immediately referred to an asylum officer for an interview to determine whether the alien has a reasonable fear of persecution or torture pursuant to § 208.31 of this chapter.") If, as in Guerrero's case, the asylum officer finds that the alien has a reasonable fear of being removed to the country designated in the reinstated removal order, then the officer must refer the matter to an Immigration Judge "for full consideration of the request for withholding of removal only." 8 C .F.R. § 208.31(e) ("If an asylum officer determines that an alien described in this section has a reasonable fear of persecution or torture, the officer shall ... issue a Form I–863, Notice of Referral to the Immigration Judge, for full consideration of the request for withholding of removal only. Such cases shall be adjudicated by the immigration judge in accordance with the provisions of § 208.16."). This regulation expressly provides that "[a]ppeal of the immigration judge's decision shall lie to the Board of Immigration Appeals." 8 C.F.R. § 208.31(e).

Since § 208.31(e) gives the Immigration Judge jurisdiction over the withholding of Guerrero's removal to Honduras, and it also gives Guerrero the right to appeal to the BIA the Immigration Judge's order regarding withholding his reinstated order of removal to Honduras, the order of removal to Honduras is not at this time administratively final within 8 U.S.C. § 1101(a)(47)(B). As previously explained, an order of removal does not become final until "(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B). Since the reinstated order to remove Guerrero to Honduras is not administratively final under § 1101(a)(47)(B), his removal period will not begin until the reinstated order becomes administratively

10

>final, *see* § 1231(a)(1)(B)(i), and Guerrero's detention is governed by § 1226(a).

*Guerrero*, 2014 WL 5502931, at *3–4 (footnotes omitted).

As I say, the matter is not free from doubt, and I have given respectful consideration to the reasoning of *Guerrero* and similar cases. In my view, however, the "threat" bar, requiring removal to a third country, despite its significant practical effects, does not really undermine the alien's post-removal-order status as such. *See Reyes*, 2015 WL 5081597, at *1. I therefore disagree with the conclusions reached in *Guerrero*. Rather, I adopt the reasoning of the United States District Court for the District of Colorado in *Reyes*.

The approach of *Reyes* is two-pronged. First, *Reyes* declined to apply the analogy to finality as it bears on appealability:

>Petitioner asks that I conflate administrative finality and judicial finality, so that only when Petitioner's appeals of any adverse administrative decision on his withholding claim are complete, the matter is considered "final" for purposes of the detention statutes. I decline to do that, because these two aspects of "finality" are distinct and serve fundamentally different and important purposes.
>
>As a matter of subject matter jurisdiction, federal courts must await exhaustion of all administrative appeals before reviewing immigration decisions, whether by a habeas corpus action or a petition for review. *Soberanes v. Comfort*, 388 F.3d 1305, 1308–09 (10th Cir. 2004). Thus, in the judicial review context, an immigration decision is final only if the BIA has rendered its decision and, even then, it is only final as to arguments actually made to the BIA. *E.g., Calderon–Rodriguez v. Terry*, 547 Fed. Appx. 867, 869 (10th Cir. 2013) (citing *Soberanes, id.*); *Garcia–Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010) ("To satisfy § 1252(d)(1), an alien must present the same specific legal theory to the BIA before he or she may advance it in court."). In the present case, no court of appeals will review Petitioner's final order of removal—as noted above, it is not reviewable [under § 1231(a)(5)]. The federal courts may only review the [immigration courts'] decision[s] on whether Petitioner has established his claim for withholding of removal. I do not believe this state of affairs logically renders the final order of removal "administratively non-

final" for purposes of detention. Although the Judicial Branch has the constitutional authority to determine finality for judicial review purposes, Congress has the constitutional authority to define administrative finality for purposes of detention, and it has done so. *See Wang v. Ashcroft*, 320 F.3d 130, 147 (2d Cir. 2003) ("The determination of when an alien becomes subject to detention under [§ 1231(a)] rather than [§ 1226] is governed by [§1231(a)(1)(B)].").

The decision in *Luna–Garcia v. Holder*, 777 F.3d 1182 (10th Cir. 2015) is an example of the courts' application of finality for purposes of judicial review, holding that "where an alien pursues reasonable fear proceedings following the reinstatement of a prior order of removal, the reinstated removal order is not final until the reasonable fear proceedings are complete." *Id.* at 1186. The court's finality analysis was focused on the issue of withholding of removal proceedings and the point at which government action is judicially reviewable. Because, in *Luna–Garcia*, all administrative and judicial proceedings concerning the issue of withholding (which was the only issue before the court) had not been completed, the removal order was not final. The court stated, "With regard to agency action generally, the Supreme Court has said that to be final, agency action must 'mark the consummation of the agency's decisionmaking process,' and it must determine 'rights or obligations' or occasion 'legal consequences.'" *Id.* at 1185.

And second, *Reyes* held that withholding of removal does not call into question the alien's post-removal status or return the alien to pre-removal status:

> Here, on the other hand, the immigration agency has completed the decisionmaking process on whether the Petitioner has a legal right to remain in the United States and has determined that he does not have that right. What has yet to be determined is whether he can be returned to Mexico, or whether the government must look to another country to which Petitioner will be removed. *Huang v. I.N.S.*, 436 F.3d 89, 95 (2d Cir. 2006) ("[W]ithholding of removal is a 'country-specific' form of relief, i.e., it bars removal to the nation of persecution, but it does not prevent exclusion and deportation to a hospitable third country."). During the pendency of that determination, there is no compelling legal reason, for purposes of detention, to treat Petitioner as an alien who is "pending a decision on whether [he] is to be removed from the United States," 8 U.S.C. § 1226(a), as opposed to an alien who "is

ordered removed." 8 U.S.C. § 1231(a)(1)(A). *See Joseph v. Holder*, 600 F.3d 1235, 1241 (9th Cir. 2010) ("The BIA has noted that 'bond and removal are distinctly separate proceedings.'") (citations omitted). The ultimate purpose of a removal proceeding (for persons who do not have legal status here) is, of course, to determine an alien's admissibility into the United States. *Clark v. Martinez*, 543 U.S. 371, 373 (2006); *Yanez–Marquez v. Lynch*, 789 F.3d 434, 448 (4th Cir. 2015) ("[R]emoval proceedings determine the alien's 'eligibility to remain in this country ...' ") (quoting *INS v. Lopez–Mendoza*, 468 U.S. 1032, 1038 (1984)). "A removal proceeding is generally 'the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States.' 8 U.S.C. § 1229a(a)(3)." *Dormescar v. U.S. Attorney Gen.*, 690 F.3d 1258, 1260 (11th Cir. 2012).

When an alien has not yet been ordered removed, as under Section 1226(a), he is, as noted above, fighting to establish eligibility to remain in the United States. An alien who has received an administratively final order of removal has lost that battle. *Castellano–Chacon v. I.N.S.*, 341 F.3d 533, 544 (6th Cir. 2003) ("Unlike an application for asylum . . . a grant of an alien's application for withholding is not a basis for adjustment to legal permanent resident status[.]"). Treating these two classes of persons differently for detention purposes is not only rational but mandated by the Immigration and Nationality Act. Indeed, if Petitioner is eligible for a bond hearing under Section 1226, then by illegally re-entering the United States once again, he has attained greater rights (in terms of potential freedom to avoid detention) than he had when he was last removed in 2007. I do not believe Congress intended such a result. Even more importantly, even if Petitioner succeeds in his withholding-only case, his detention will still be governed by Section 1231(a)(5), because his status will be that of an alien with a final order of removal. *Al–Bareh v. Chertoff*, 552 F. Supp. 2d 794, 798–99 (N.D. Ill. 2008). If Petitioner had a final order of removal (and was subject to detention under Section 1231) prior to expressing a fear of torture, and he will have a final order of removal (and will be subject to detention under Section 1231) after his withholding proceedings are completed (no matter what the outcome is), I cannot see how his detention status should change as a matter of law during his withholding proceedings. Such a transitory appearance of new rights vis-a-vis an alien's ability to obtain bond makes no legal sense.

*Reyes*, 2015 WL 5081597 at *3-4.

This country, for humanitarian reasons, has recognized the threat Ms. Pina would face if returned to Mexico. Ms. Pina's illegal reentry to the United States, however, does not entitle her to rights greater than those she possessed at the time of her prior removal. *See, e.g., Verde-Rodriguez*, 734 F.3d at 203 ("'The contrary conclusion would create a new and wholly unwarranted incentive for aliens who have previously been removed to reenter the country illegally in order to take advantage of this self-help remedy. It would also make a mockery of aliens who do respect our laws and wait patiently outside our borders seeking lawful admission.'") (quoting *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 497 (9th Cir. 2007)). I am also persuaded by the *Reyes* Court's recognition that the statute denies any court the authority to review or re-determine a petitioner's removability with respect to a reinstated order of removal. *See Reyes*, 2015 WL 5081597 at *3-4; *Santos*, 2014 WL 2532491, at *3-4 ("Petitioner . . . fails to recognize that his [withholding proceedings are] not a . . . review of his removal order[, but r]ather" are limited to "withholding of removal" to his home country). The statute having prohibited such review of a removal order, a Court must hesitate in concluding that withholding of removal is really tantamount to such review.

To the *Reyes* discussion, I add only the following. Withholding of removal does not adjust the alien's status. As to removal, it affects not the question whether, but the question where. By that I mean that it governs the manner in which removal is to be effected, not removability *per se*. To be sure, the alien may have a keen interest in whether she is removed to Mexico, or some other country. Indeed, the latter option is a result of her having petitioned for it. That is different from saying that, by virtue of her having petitioned for it, she is no longer in removal status; only her destination, not her removability, is in play.

For these reasons then, I hold that Ms. Pina has been in post-removal-order detention, pursuant to § 1231(a), since December 7, 2015.

### C. *Zadvydas* Analysis

It follows that Ms. Pina's rights with respect to detention and release are governed by the post-removal-order standards of *Zadvyas,* outlined at pp. 4–6, *supra*. To say that she is in post-removal status is not to say that the government may detain her indefinitely while it searches for a country that will have her.

Ms. Pina's detention since December 7, 2015, has surely exceeded the six month period that is deemed presumptively reasonable under *Zadvydas*. The inquiry, however, is not a rigid one; it must take all circumstances, presumably including time necessarily spent in Ms. Pina's petition for withholding of removal, into account. To obtain habeas relief, the alien must also show that there is no reasonable likelihood of actual removal in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701. The burden is on Ms. Pina to make this showing. *See Barenboy v. Attorney General of U.S.*, 160 F. App'x 258, 261 n.2 (3d Cir. 2005) ("Once the six-month period has passed, the burden is on the alien to 'provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future....' Only then does the burden shift to the Government, which 'must respond with evidence sufficient to rebut that showing.'") (quoting *Zadvydas*, 533 U.S. at 701).

Here, while Ms. Pina can no longer be removed to Mexico, she may be removed to another country. *See* 8 U.S.C. § 1231(b)(2)(E)(vii). Ms. Pina has not made a showing that such a removal is not likely to occur in the reasonably foreseeable future.

I recognize, however, that Ms. Pina filed her habeas petition without the benefit of the Court's ruling that she occupies post-removal-order status. I therefore will deny the habeas

petition as presented, but without prejudice to the filing of an amended petition within thirty days. Such an amended petition, if it is to succeed, must address the *Zadvydas* standard and state reasons for believing that removal is not likely to occur in the reasonably foreseeable future.

### III. CONCLUSION

For the foregoing reasons, the habeas petition is denied without prejudice. An appropriate order will be entered.

DATED: March 9, 2017

_____
KEVIN MCNULTY
United States District Judge